**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-71563-sms |
| | ) | |
| RITA ANN ROSE | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |

==========================================================================

**FIRST AMENDED AND RESTATED**
**CHAPTER 11 PLAN OF**
**REORGANIZATION**
**FOR RITA ANN ROSE**

(Amending the Plan Filed at Doc. No. 37)

**Dated this 15th day of April, 2018**

---

Filed by:

Rita Ann Rose, Debtor and
Debtor in Possession

Attorneys for Debtor and Debtor in Possession,
Howard P. Slomka, Esq.

Slipakoff & Slomka, P.C.
2859 Paces Ferry Road
Suite 1700
Atlanta, GA 30339

COMES NOW, Rita Ann Rose debtor and debtor in possession in the above- captioned case (the "Debtor"), and, pursuant to sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this First Amended and Restated Plan (the "Plan") for the resolution of the Claims against the Debtor. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## Article 1
## Introduction

1.1     Disclosure Statement.  Contemporaneously with the filing of the Plan, Debtor filed and served a First Amended and Restated Disclosure Statement, as required by section 1125 of the Bankruptcy Code. The Disclosure Statement contains the Debtor's history, financial information regarding Debtor and its assets, and a solicitation of acceptances of this Plan.

1.2     Property and Claims.  This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1     The following terms, when used in this Plan, shall have the following meaning:

2.1.1   "Administrative Claim" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2   "Allowed Claim" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 *or* 503 of the Bankruptcy Code.

2.1.3   "Allowed Secured Claim" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4   "Allowed Unsecured Claim" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5   "Assets" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6 "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7 "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8 "Bankruptcy Case" means the chapter 11 case initiated by the Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9 "Bankruptcy Code" means title 11 of the United States Code.

2.1.10 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12 "Business Day" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia.

2.1.13 "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14 "Causes of Action" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "Chapter 11" means chapter 11 of the Bankruptcy Code.

2.1.16 "Claim" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 "Class" means a category of Claims described in this Plan.

2.1.18 "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19 "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.20 "Confirmation Order" means the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

Case.

2.1.21 "Debtor" shall mean Lindy Daniel Farmer, Jr., the debtor in this Bankruptcy.

2.1.22 "Disallowed Claim" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.23 "Disclosure Statement" means the Disclosure Statement for Plan filed by Debtor as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.24 "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25 "Distribution" means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

2.1.26 "District Court" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.27 "Effective Date" means the date that is sixty (60) days after entry of a final non-appealable Confirmation Order.

2.1.28 "Equipment" means the machinery, fixtures, equipment, and other supplies used by Debtor in the operation of business.

2.1.29 "Estate" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.30 "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which Debtor is a parties.

2.1.31 "Filing Date" means November 6, 2015.

2.1.32 "Final Distribution" means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

30

2.1.33 "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.34 "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.35 "Holder" means a holder of a Claim or Interest, as applicable.

2.1.36 "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.37 "Interests" means the equity interests in Debtor.

2.1.38 "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.39 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.40 "Plan" means this plan as the same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.41 "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.42 "Priority Tax Claim" means a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.43 "Professional Compensation" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtor and the unsecured creditors' committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.44 "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

2.1.45 "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.46 "Released Parties" means collectively Debtor and Reorganized Debtor.

2.1.47 "Retained Action" means all claims, Causes of Action, rights of action,

30

suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.48    "Schedules" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.49    "Secured Claim" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.50    "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.51    "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52    "Unsecured Claim" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2    Time.    Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3    Events of Default.    In the event of a default by Debtor in payments under the Plan or otherwise, the Holder of such Claim must send written notice to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless such Holder has received written notice of a change of address for Debtor, as applicable.  The Holder of such Claim must send such Notice via certified mail with a courtesy copy via email and regular mail to Howard P. Slomka, Esq. at the address reflected in the then current directory of the State Bar of Georgia.  Debtor shall have ten (10) days from the Debtor's receipt of the notice of default to cure such default.  Receipt by the Debtor's Attorney is for courtesy notice only and shall not be deemed receipt by the Debtor of the required Notice.

**Article 3**
**Classification of Claims and Interests; Impairment**

3.1    Summary.    The categories of Claims and Interests set forth below classify all Claims against the Debtor for all purposes of this Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any

remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

    3.2    Class 1 shall consist of the Priority and Secured Claims of the Georgia Department of Revenue.

    3.3    Class 2 shall consist of the Secured Claims of the Residential Mortgage Holders (Wells Fargo and Specialized Loan Servicing).

    3.4    Class 3 shall consist of the Secured Claim of Greenpoint Mortgage (HELOC).

    3.5    Class 4 shall consist of the Unsecured Judgment Claim of St. Paul Fire & Marine Insurance Company ("St. Paul").

    3.6    Class 5 shall consist of the General Unsecured Claims.

## Article 4
## Treatment of Claims and Interests

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to prepay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan) without prepayment penalty.

**4.1 Class 1:** **Priority Claims by IRS and Georgia Department of Revenue**

Class 1 consists of the claims of GADOR. At the time of filing this Disclosure Statement, GADOR is due $1,602.78 based on unpaid 2010 sales taxes as reflected in proof of claim #3.

Debtor's Plan will require Debtor to pay the Class 1 Claims in full within 60 days of the Effective Date, with interest at the currently applicable statutory rate in accordance with 11 USC 1129(a)(9).

4.2    **Class 2: Secured Claims of Mortgage Lenders Wells Fargo and Specialized Loan Servicing.**

Class 2 consists of the Secured Claim of Wells Fargo ("WF") and Specialized Loan Servicing ("SLS") (see Proof of Claim 4). Both of these loans are secured by rental properties owned or partially-owned by Debtor. Both properties produce sufficient rental income to pay the mortgage payments and neither mortgage is in default. The Debtor's Plan will require Debtor to continue making monthly payments due under the mortgages based on their pre-petition amortization schedule at the stated interest. Both debts require continued payment of tax and

insurance escrows.  <u>In both cases, Debtor will cure all pre-petition arrearage within 90 days after confirmation of the Plan, with no penalties or interest.</u>

A summary of Class 2 is shown below:

|  | Pre-Petition Secured Debt |  | Proposed Monthly Payment |  |
|---|---|---|---|---|
| Wells Fargo – Debt secured by Florida Condo | $33,573.00 |  | $341.09 per month, plus iinsurance and tax escrow. |  |
| SLS – Debt secured by Norton Circle House | $103,074.94 |  | $522.25 |  |

The Claim of the Class 2 Creditor is Impaired by the Plan and holders of Class 2 Claims are entitled to vote to accept or reject the Plan.  Debtor reserves the right to object to any and all claims.

In the event of a default of these payments, Creditor may give written notice to Debtor who shall have 15 days to cure the default.  In the event of the dismissal or administrative closure of the case, then the automatic stay shall be deemed to be lifted, without further action from the Court, and the Creditor may proceed to enforce its remedies through state law.

4.3    **<u>Class 3:  Secured Claim of Home Equity Lender Greenpoint Mortgage Funding, Inc.</u>**

Class 3 consists of the Secured Claim of Greenpoint Mortgage Funding, Inc. ("Greenpoint") (see Proof of Claim 8, as assigned), secured by Debtor's interest in the Norton Circle rental property.  The Debtor's Plan will require Debtor to continue making monthly payments due under the mortgage/ Home equity line of credit with interest accruing at 7.125%.  Any pre-petition arrearage will be paid, without penalties or interest within 90 days after confirmation of the Plan.

The Claim of the Class 3 Creditor is Impaired by the Plan and holders of Class 3 Claims are entitled to vote to accept or reject the Plan.  Debtor reserves the right to object to any and all claims.

In the event of a default of these payments, Creditor may give written notice to Debtor who shall have 15 days to cure the default.  In the event of the dismissal or administrative closure of the case, then the automatic stay shall be deemed to be lifted, without further action from the Court, and the Creditor may proceed to enforce its remedies through state law.

4.4     **Class 4:  Unsecured Claim of Judgment Creditor St. Paul Fire & Marine Insurance Company.**

Class 4 Claims shall consist of all amounts due and owing by Debtor to St. Paul Fire & Marine Insurance Company ("St. Paul").  Pursuant to Claim 9-2, Debtor is jointly and severally liable on a judgment debt to St. Paul in the amount of $452,588, plus interest (the "Judgment").   The Judgment is currently the subject of a subrogation claim against Canal Indemnity Company pending in Dekalb County Superior Court in case 09-CV-5904 (the "Subrogation Claim").  If successful, the Debtor will collect from Canal the full amount due and payable under the Judgment.  Debtor shall assign to St. Paul all of her right and interest to the Subrogation Claim as part of its obligation to Class 4.  Additionally, Debtor shall pay to St. Paul $100 monthly toward the Class 4 Claim, with a balloon payment due upon the sale of any asset of Debtor or at the 60th month following the Effective Date.  In the event that the Subrogation Claim is lost, then St. Paul shall have the right to demand a payment of the full Judgment over the remaining months left in the 60-month Plan period, or move this Court for a conversion of the case to a Chapter 7 liquidation. In the event of a liquidation of an asset, then unsecured Class 4 and Class 5 shall be paid the proceeds pro rata.

6.5     **Class 5:  General Unsecured Claims**

Class 5 Claims shall consist of all amounts due and owing by Debtor on unsecured debts including contracts, guaranties, notes or accounts.  Debtor shall pay Holders of Allowed Unsecured Claims their pro-rata share of Debtor's disposable income for the 60 months following the Effective Date of the Plan.  Debtor proposes to pay Class 5 in quarterly payments of at least $200 in the aggregate.   In addition to quarterly payments of at least $100 to each of the creditors, Debtor shall make lump sum payments upon the sale of any asset to any party, and shall make a balloon payment to Class 5 creditors on or prior to the 60th month following the Effective Date.  Debtor shall pay Class 5 at least 25% of the value of the claims as shown below.   In the event that Class 4 is released due to the Subrogation Claim paying St. Paul directly, then Class 5 shall collect a higher pro rate portion of the unsecured pool.

A list of potential Class 5 Claimants and their claims are set forth below.

| CREDITOR | CLAIM | PLAN QUARTERLY PAYMENT |
|---|---:|---:|
| Wells Fargo Credit Card | $7,177 | $100 |
| SunTrust Credit Card | $8,433 | $100 |
|  |  |  |
|  |  |  |
| TOTAL | $15,610 | $200 |

30

## Article 5
## Treatment of Unclassified Claims

5.1     Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article 5 and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained The Slomka Law Firm, P.C. ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $14,583.00 and as of the date hereof, the fees and expenses incurred by the Firm have exceeded the retainer. Debtor shall pay the Firm the outstanding fees as approved by the Court on the Effective Date, unless otherwise agreed by Law Firm. Debtor is paying post-petition bills and does not expect any claims for unpaid post-petition goods and services other than professional fees. Debtor will incur quarterly trustee fees which Debtor shall pay when due until such time as a final order is entered closing the Case.

5.2     Administrative Expense Claims.

5.2.1     Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

5.2.2     Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from post-petition operations by Debtor in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the entry of the Confirmation Order. At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

5.2.3     Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within the time set by the Bankruptcy Court.

Debtor's attorney fees during the pendency of the case shall be paid as the same may be approved by the Bankruptcy Court. Debtor may pay professional fees incurred after confirmation of this Plan without Court approval. Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court. The Debtor estimates that professional administrative expenses will be approximately $30,000.00 above the initial retainer.

### Article 6
### Means for the Implementation of the Plan

6.1    Parties Responsible for Implementation of the Plan    Upon confirmation, Debtor will be charged with administration of the Case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.

6.2    Sources of Cash for Distribution. Debtor shall satisfy the claims from the income Debtor receives from his employment and from the net proceeds of sales of real estate owned by Debtor's family.

The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoint some other entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

6.3    Preservation of Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action. The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserve all causes of actions for breach of any former or now existing agreement or otherwise.

6.4    Effectuating Documents, Further Transactions. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5    Exemption from Certain Transfer Taxes and Recording Fees. Pursuant to section

1146(c) of the Bankruptcy Code, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6    **Further Authorization**.  Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7    **Liabilities of the Debtor**.    Debtor will not have any liabilities except those expressly assumed under the Plan.  Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

## Article 7
## Distributions

7.1    **Disbursing Agent**.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Debtor or its agent.

7.2    **Distributions of Cash**.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.3    **No Interest on Claims or Interests**.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

7.4    **Delivery of Distributions**.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.   If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made in Cash shall be retained by Debtor until such Distributions are claimed.  All Cash Distributions

30

returned to Debtor and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

7.5     <u>Distributions to Holders as of the Record Date</u>.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6     <u>Fractional Dollars</u>.  Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7     <u>Withholding Taxes</u>.  Debtor or Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 8
## Procedures for Treating and Resolving Disputed Claims

8.1     <u>Objections to Claims</u>.  Debtor shall be entitled to object to Claims, <u>provided</u>, <u>however</u>, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

8.2     <u>No Distributions Pending Allowance</u>.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3.    <u>Resolution of Claims Objections</u>.  On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 9
## Provision for Assumption of Unexpired Leases and Executory Contracts

9.1 <u>Provisions Regarding Executory Contracts</u>

Any unexpired leases or executory contracts which are not assumed or the subject of a pending motion to assume or reject shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after mailing of notice of the Confirmation Order.  Any claims which are not timely filed will be

disallowed and discharged.

## Article 10
## Effect of Plan on Claims and Interests

10.1    Vesting of Debtor's Assets    Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revert in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the Effective Date, Debtor may use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2.    Discharge of the Debtor.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtor or his Estate that arose prior to the Effective Date.  However, pursuant to section 1141(d)(5) of the Bankruptcy Code, except in limited circumstances, a discharge is not available to an individual debtor unless and until all payments have been made under the plan.  Therefore, Debtor does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code.  Debtor is not waiving his right to seek entry of a discharge order before completion of all plan payments.  In the event Debtor seeks entry of a discharge order after the entry of a final decree, Debtor may reopen the Case for purposes of obtaining a discharge.  Additionally, the Plan shall not be construed as attempting to discharge any debt that is excepted from discharge pursuant to Bankruptcy Code sections 1141(d)(2) and 523(a)(1).

10.3    Release by Debtor of Certain Parties. Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, Debtor, as a debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all officers, directors, employees, consultants, agents, financial advisors, attorneys and other representatives of Debtor who served in such capacity on or subsequent to the Filing Date, in their capacity as such for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, Debtor, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between Debtor and any such party, the restructuring of Claims prior to or in the bankruptcy case, or any act, omission, occurrence, or event in any manner related to any such Claims or, restructuring or the bankruptcy cases.  All representatives of the Estate shall be bound, to the same extent Debtor is bound, by all of the releases set forth in this paragraph.

10.4    Release by Holders of Claims and Interests.  **Except as otherwise specifically provided in this Plan, on the Effective Date, (a) each Person that votes to accept this Plan or is presumed to have voted for this Plan pursuant to Section 1126(f) of the Bankruptcy Code; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a debtor), that has, held, holds, or may hold a Claim or Interest (Each, a "Release Obligor"), in**

30

**consideration for the obligations of the Debtor and the Reorganized Debtor under this Plan and the Cash, Contracts, Instruments, Releases, Agreements or Documents to be delivered in connection with this Plan, shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any Claim or Cause of Action existing as of the Effective Date arising from, based on, or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim of such Release Obligor, and any act, omission, occurrence, or event in any manner related to such subject matter, transaction, or obligation; provided however, that this article 10.4 shall not release any released party from any cause of action held by a governmental entity existing as of the Effective Date, based on (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) the Securities Exchange Act of 1934, as amended, the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, or (v) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended and provided.**

10.5    <u>Injunction</u>.    Upon entry of a Confirmation Order in this case, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim provided for under this Plan against Debtor or Reorganized Debtor or against any property of Debtor or Reorganized Debtor or any property otherwise pledged as collateral against such Claim provided for under this Plan, except as provided for in this Plan.

10.6    <u>Setoffs</u>.    Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder of a Claim.

10.7    <u>Effect of Confirmation</u>.

10.7.1    <u>Binding Effect</u>. On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

10.7.2    <u>Effect of Confirmation on Automatic Stay</u>. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay provided in § 362(a) of the Bankruptcy Code shall terminate.

10.7.3    <u>Filing of Reports</u>. Reorganized Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.7.4    <u>Post-Effective Date Retention of Professionals</u>. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will employ and pay professionals in the ordinary course of business.

**Article 11**
30

### Conditions Precedent

11.1 <u>Conditions to Confirmation</u>. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.1.1 The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to the Debtor in their sole and absolute discretion; and

11.1.2 The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Cases.

11.2 <u>Conditions to the Effective Date</u>. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.2.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan (including documents relating to the Exit Financing) shall be in form and substance that is acceptable to Debtor in their reasonable discretion;

11.2.3 Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3 <u>Waiver of Conditions to Confirmation or Consummation</u>. The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor). The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

### Article 12
### Retention and Scope of Jurisdiction of the Bankruptcy Court

12.1 <u>Retention of Jurisdiction</u>. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1 To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

    12.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

    12.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

    12.1.4  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

    12.1.5  To hear and rule upon all applications for Professional Compensation;

    12.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

    12.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

    12.1.8  To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

    12.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

    12.1.10  To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

    12.1.11  To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

    12.1.12  To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

    12.1.13  To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

    12.1.14  To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of their assets during the Bankruptcy Case; and

    12.1.15  To enter a final decree.

  12.2 **Alternative Jurisdiction.**  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court

having jurisdiction with regard thereto.

12.3    Final Decree.  The Bankruptcy Court may, upon application of the Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.  In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that:  (a) the Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause. Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen Debtor's case shall be waived, and Debtor shall not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia.

## Article 13
## Miscellaneous Provisions

13.1    Modification of the Plan.  Debtor shall be allowed to modify this Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, Debtor may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  Debtor reserve the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2    Allocation of Plan Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3    Applicable Law.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4    Preparation of Estate Returns and Resolution of Tax Claims.  Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5 <u>Headings</u>.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6 <u>Revocation of Plan</u>.  Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7 <u>No Admissions; Objection to Claims</u>.  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.  The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8 <u>No Bar to Suits</u>.  Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim.  Without limitation, Debtor retain and reserve the right to prosecute Retained Actions.

13.9 <u>Conflicts</u>.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## Article 14
## Tax Consequences

Tax consequences resulting from confirmation of this Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.  Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  The proponent assumes no responsibility for the tax effect that consummation of this Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted, this 15th___ day of April, 2018
/s/_____
Rita Ann Rose
Debtor and Debtor in Possession

**Slipakoff & Slomka, P.C.**

<u>*s/ Howard P. Slomka*</u>
Howard P. Slomka
Georgia Bar No. 652875
2859 Paces Ferry Road
Suite 1700
Atlanta, GA 30339
(404) 800-4001
HS@myATLlaw.com

30