**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-71563-sms |
| | ) | |
| RITA ANN ROSE | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |

===================================================================

**FIRST AMENDED AND RESTATED**
**CHAPTER 11  DISCLOSURE STATEMENT**

(Amending the Disclosure Statement Filed at Doc. No. 36)

Filed by:

Rita Ann Rose, Debtor and Debtor in Possession

Attorneys for Debtor and Debtor in Possession,
Howard P. Slomka, Esq.

Slipakoff and Slomka, P.C.
2859 Paces Ferry Road SE, Suite 1700
Atlanta, GA 30339
April 15, 2018

**Disclaimer**

*All Creditors and Holders of Interests are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.*

*This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws. This Disclosure Statement has neither been approved nor disapproved by the Securities and Exchange Commission ("SEC"), nor has the SEC passed on the accuracy or adequacy of the statements contained herein. This Disclosure Statement was prepared to provide holders of Claims and Interests in Debtor with "adequate information" (as defined in the Bankruptcy Code) so that they can make an informed judgment about the Plan.*

*As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.*

*The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.*

**The representations in this Disclosure Statement are those of Debtor. No representations concerning Debtor are authorized other than as set forth in this statement. Any representation or inducement made to secure acceptance of this Plan which are other than as contained in this document should not be relied upon by any Person. The information contained herein has not been subject to a certified audit. Every effort, however, has been made to provide adequate financial information in this Disclosure Statement. The representations by Debtor are not warranted or represented to be without any inaccuracy, although every effort has been made to be accurate. Neither the Plan nor this Disclosure Statement has been designed to forecast consequences which follow from a general rejection of this Plan, although an attempt is made to state the consequences of a liquidation of Debtor.**

## I.    Introduction and General Information

This disclosure statement ("Disclosure Statement") is submitted by Rita Ann Rose (the "Debtor"), to provide information to parties in interest about the Chapter 11 Plan (the "Plan") filed by Debtor. This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding Debtor's prepetition history and events that have occurred during Debtor's Chapter 11 case. This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan. In addition, this

Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in Debtor's Chapter 11 case, and financial information. Although Debtor believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions. Factual information contained in this Disclosure Statement has been provided by Debtor, except where otherwise specifically noted. Debtor is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission. The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.

Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving Debtor or any other party; provided, however, that in the event Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of Debtor's Plan as to holders of Claims or Interests. You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.

Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties. Although Debtor has used its best efforts to be accurate in making these statements, it is possible that the assumptions made by Debtor may not materialize. In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.

**Parties voting on the Plan should read both the Plan and this Disclosure Statement.**

### A.    Definitions

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan. In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan. The Filing Date, as defined in the Plan, shall mean November 7, 2015, and the Effective Date, as defined in the Plan, shall mean the date that is sixty (60) days after the entry of a Confirmation Order.

### B.    The Disclosure Statement

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guarantee of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind Debtor and all holders of Claims against Debtor, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan. Thus, you are encouraged to read this Disclosure Statement carefully. In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement, carefully and in their entirety before voting to accept or reject the Plan. This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning this case.

## II.    Voting on the Plan and Confirmation Process

### A.    Voting Instructions

Accompanying this Disclosure Statement are copies of the following documents: (1) the Plan and (2) a Ballot to be executed by Holders of Impaired Claims who are entitled to vote to accept or reject the Plan. The Ballot contains voting instructions. Please read the instructions carefully to ensure that your vote will count.

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in Classes 1-6 for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, Slipakoff and Slomka, P.C., 2859 Paces Ferry Road SE, Suite 1700 Atlanta GA 30339  Attn: Howard P. Slomka, Esq.).

**In order for your Ballot to count, it must be received within the time indicated on the Ballot and the Ballot must clearly indicate your Claim, the Class of your Claim, and the amount of your Claim.**

**By enclosing a Ballot, Debtor is not admitting that you are entitled to vote on the Plan, is not admitting that your Claims is allowed as set forth on the Ballot, and is not waiving any right to object to your vote or your Claim.**

### B.    Who May Vote

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan. Some classes, as identified below, are impaired and entitled to vote to accept or reject the Plan. As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered. Any class that is "unimpaired" is not entitled to vote to accept or reject a plan and is conclusively presumed to have accepted the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote. Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (i) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in Debtor's Schedules as other than "disputed," "contingent," "unknown" or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount. In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purposes. Accordingly, if you did not receive a Ballot and believe that you are entitled to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes.

**Debtor reserves the right through the claim reconciliation process to object to or seek to disallow any claim for distribution purposes under the Plan.**

## C.    Requirements of Confirmation

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met. Those requirements include the following:

1.    The Plan classifies Claims and Interests in a permissible manner;

2.    The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3.    The Plan has been proposed in good faith and not by any means forbidden by law;

4.    The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan; and

5.    The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

In addition to the confirmation requirements described above, the Plan must also be approved by all Impaired Classes of Claims entitled to vote. If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Impaired Class. The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Impaired Class of Claims, and at least one Impaired Class has voted in favor of the Plan without regard to any votes of insiders. To the extent necessary to obtain confirmation, Debtor will seek to "cram down" the Plan.

### D.    Acceptance or Rejection of the Plan and Cram Down

The Class containing your Claim will have accepted the Plan by the favorable vote of majority in number and two-thirds in amount of Allowed Claims actually voting.   In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if you retain your lien and receive deferred cash payments totaling the allowed amount of your Secured Claim as of the Effective Date of the Plan, the collateral is sold and your Lien attaches to the proceeds of the sale, or you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim.  If you hold a Claim that is not an Allowed Secured Claim, and is not entitled to priority under § 507 of the Bankruptcy Code, the Plan is fair and equitable if you receive property of a value equal to the allowed amount of your Claim or if no junior Class receives or retains anything under the Plan.

### E.    Confirmation Hearing

The Bankruptcy Court may enter an Order Approving Disclosure Statement and Notice of Confirmation Hearing (the "Scheduling Order") that schedules a hearing to consider confirmation of the Plan ("Confirmation Hearing").   The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing to those parties present at the Confirmation Hearing.  The Court may also enter an Order conditionally approving the Disclosure Statement and setting a combined hearing on the Disclosure Statement and the Plan at the same hearing.

### F.    Objections to Confirmation

As will be set forth in the Scheduling Order, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for the Debtor by the time indicated in the Scheduling Order.   The Scheduling Order will contain all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

### G.    Whom to Contact for More Information

If you have any questions about the procedure for voting your Claim or the packet of materials you received, please contact Howard P. Slomka at the address indicated below or by telephone at (404) 800-4017.  If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact Slipakoff and Slomka PC 2859 Paces Ferry Road SE Suite 1700 Atlanta, GA 30339 Attn: Howard Slomka; or by electronic mail to hs@myatllaw.com.

### III.    Historical Background

#### A.    Description of Debtor

Debtor is an 84-year old retired married resident of the State of Georgia.  Debtor resides at 1217 Village Terrace Court, Dunwoody, Georgia 30338 (the "Residence").  The Residence is owned by a family LLC of which she owns 11.11%  She has approximately $36,000 equity in the Residence.  Debtor earns nominal rental income and social security of $1,650 per month, combined with her husband's social security of $2,039 per month.   The combined household gross income is $5,477 per month.

Debtor was forced to file this bankruptcy due to unpaid promissory notes which were secured by her personal and LLC assets.   The promissory notes were executed for business purposes, with the funds going into Debtor's former company known as CPD Plastering, Inc. ("CPD").  Debtor owned and operated CPD with her son as equal partners, and the real estate recession lead to the downfall and ultimate failure of CPD.   Prior to its dissolution, Debtor had pledged personal assets to secure the debts of CPD.  Other than these CPD-related debts, Debtor had incurred very little personal debts and was current in all obligations.

Over the course of the Bankruptcy, Debtor has lost her interest in the Beach House in Palm Island Florida (the "Beach House") and has successfully litigated and dismissed a confirmation hearing seeking an unsecured deficiency claim in Charlotte County Florida Circuit Court.

#### B.    Prepetition Assets and Liabilities

Debtor values her real property as shown in the tables below.

| REAL PROPERTY DESCRIPTION | Estimated Value | Debt | Approx. Equity | NOTES |
|---|---|---|---|---|
| **Properties owned in Debtor's name** | | | | |
| Rental 1 – 396 Norton Circle, Smyrna GA | $110,000 | $108,423 | $1,000 | Reliable tenant. Produces rental income of $850 per month. |
| Rental 2 – Cape Haze, FL Condo | $75,000 | $34,000 | $40,000 | Seasonal rental.  Breaks even.  50% ownership |
| Rental 3 – Palm Island Beach Home<br><br>NO LONGER OWNED – FORECLOSED ON NOVEMBER 10, 2016 | $1,500,000 | $1,077,000 | $0 | NO LONGER OWNED – FORECLOSED ON NOVEMBER 10, 2016 |
| | | **Subtotal** | **$41,000** | |

| Properties owned by LLCs | | | Debtor's Equity Share | |
|---|---|---|---|---|
| | | | | |
| Rental 4 – 4751 Winters Chapel Road | 70,000 | None | $7,000 | Debtor owns 11.11% of RRE 1, LLC |
| Residence – 1217 Village Terrace | 360,000 | None | $36,000 | Debtor owns 11.11% of RRE 2, LLC |
| Undeveloped Land – 19 acres in Gainesville, Ga. | 700,000 | 600,000 | $20,000 | Debtor owns 20% of this land with her husband and son. |
| | | TOTAL | $104,000 | |

Debtor's assets as of the Filing Date consisted of the following Personal Property listed on Schedule B of Debtor's schedules of assets:

| PROPERTY DESCRIPTION | VALUE |
|---|---|
| | |
| Checking accounts | $    1,750.00 |
| | |
| Household Goods | $    1,500.00 |
| | |
| Womens wear | $    500.00 |
| | |
| Costume Jewelry | $    325.00 |
| | |
| Scottrade Account | $    4,000.00 |
| | |
| TOTAL | 8,075.00 |

Debtor's estimated liabilities total $1,265,440.96 which include (a) secured claims totaling $1,241,995.96 and (b) unsecured priority claims of 0.00, and (c) unsecured claims totaling approximately $23,445.00.

## IV.    The Chapter 11 Case

### A.    Reasons for Filing Chapter 11

Debtor filed bankruptcy as a result of the uncertainties associated with the loans secured by the real estate in Palm Island, Florida.   Debtor expects to pay off off loans in full through the Chapter 11 Plan of Reorganzation.

Since the filing of the plan, Debtor has lost the Beach House in Palm Island Florida to foreclosure.   Follwing a confirmation action in Charlotte County Florida, the secured claims of all creditors secured by the Beach House are now extinguished in their entirety.

### B.    Professionals

On November 21, 2016, Debtor filed an application requesting authorization to retain the law firm of The Slomka Law Firm, P.C. ("Slomka") to serve as bankruptcy counsel in this Case ("Slomka Application" at Doc. No. 14).    The Court entered its Order approving Slomka on February 11, 2016 (Doc. No. 40).

### C.    Motions Pending

None

### D.    Payments to Creditors within the Ninety (90) Days and One (1) Year Prior to the Filing Date

Payments to creditors during the ninety (90) days prior to the Filing Date are set forth in the schedules and statement of financial affairs.  Additionally, with regard to insiders, payments made to creditors within the one (1) year prior to the Filing Date are listed in the statement of financial affairs.

Under the Bankruptcy Code, Debtor may seek to avoid and recover certain transfers that occur within the ninety (90) days prior to the Filing Date as preferential under Sections 547 and 550 of the Bankruptcy Code.   Debtor reserves the right to pursue any and all actions it deems appropriate and nothing herein shall be construed as a waiver of any claims or causes of action.

As of the date of this Disclosure Statement, Debtor is not aware of any transfers which he could avoid as preferential.

### E.    Bar Date:  April 15, 2016

On January 28, 2016, Debtor filed a Motion to Establish Bar Date for Filing Proofs of Claim (the "Bar Motion") (Doc. No. 35) under Bankruptcy Rule 3003(c)(3).  The Court filed its Order setting April 15, 2016 as the Bar Date on February 11, 2016 (Doc.No. 41).

### V.    Summary of the Plan

The following summary of the Plan provides only a brief description of its provisions. The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.

The Plan provides for an equitable distribution to creditors of Debtor and preserves the value of Debtor's estate. Debtor believes that any alternative to confirmation of the Plan, such as liquidation or attempts by other parties in interest to file a competing plan, would result in significant delays, litigation, and/or impaired recoveries. Moreover, Debtor believes that the creditors will receive greater and earlier recoveries under the Plan than those that would be achieved in liquidation or under an alternative Chapter 11 plan. **For these reasons, Debtor urges you to return your Ballots accepting Debtor's Plan.**

The Plan contemplates the reorganization of Debtor's financial affairs and the resolution of the outstanding Claims against Debtor pursuant to sections 1129(b) and 1123 of the Bankruptcy Code. The Plan classifies all Claims against Debtor into separate Classes.

## VI.    Description of the Plan

### A.    Retention of Property by Debtor

Upon confirmation, Debtor will retain all property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors. Debtor will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in Debtor's Schedules).

### B.    Parties Responsible for Implementation of the Plan

Upon confirmation, Debtor will be charged with administration of the Case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.

### C.    Liabilities of Debtor

Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business and family/household finances after the Filing Date ("Ordinary Course Expenses"), and those Ordinary Course Expenses will be paid in the ordinary course of business as they become due or as agreed upon by the Holder of the Ordinary Course Expense claim.

### D.    Funding of the Plan

Debtor will satisfy all claims from her retirement income and rental income, and from the development and/or sale of the Gainesville Property, and/or the Florida Condo to the extent required.

The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other person or entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

### E.    Provisions Regarding Executory Contracts

Any unexpired leases or executory contracts which are not assumed pursuant to this Plan or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after entry of the Confirmation Order. Any claims which are not timely filed will be disallowed and discharged.

### F.    Avoidance Actions and Retained Rights

The Plan provides that Debtor shall retain all rights of action against others. The Plan also provides that Debtor shall retain "Avoidance Actions" under Chapter 5 of the Bankruptcy Code.

Debtor may also have Claims against others which are retained. Notwithstanding the foregoing, Debtor is reviewing records and believes that any recovery for preference claims would be minimal because claims are subject to, among others, the ordinary course business defense. Further, Debtor is not aware of any fraudulent conveyance claims.

### G.    Treatment of Claims and Interests

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below. A complete description of the treatment of each Class is set forth in the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to pay any Claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan with the accrued and unpaid interest, if any under the Plan) without prepayment penalty.

## 6.1    Class 1:  Priority and Secured Claims by Georgia Department of Revenue

Class 1 consists of the claims of GADOR.    At the time of filing this Disclosure Statement, GADOR is due $1,602.78 based on unpaid 2010 sales taxes as reflected in proof of claim #3.

Debtor's Plan will require Debtor to pay the Class 1 Claims in full within 60 days of the Effective Date, with interest at the currently applicable statutory rate in accordance with 11 USC 1129(a)(9).

### 6.2    Secured Claims of Charlotte County, Florida Tax Collector – NO LIABILITY REMAINS

The Former Class 2 consisted of the Secured Claims of Charlotte County, Florida Tax Collector ("CCTC").  The CCTC secured claim is secured by the Beach House and is past due in the amount of $42,008.59.  <u>Former Class 2 is now paid in full following the foreclosure of the Beach House.   CCTC will not be treated in the Plan.</u>

### 6.3    Secured Claim of SunTrust for the Beach House Debt NO LIABILITY REMAINS

Former Class 3 consists of the Secured Claim of SunTrust for its debt secured by the Beach House (see Proof of Claim #1).   Following the foreclosure of the Beach House and the settlement of the confirmation action in Charlotte County, <u>Debtor has no further liability to Former Class 3, and SunTrust's secured claim on the Beach House will not be treated in the Plan.</u>

### 6.4    Secured Claim of Lot 47 Island Harbor Club, LLC NO LIABILITY REMAINS

Former Class 4 consists of the Secured Claim of Lot 47 Island Harbor Club, LLC ("Lot 47") secured by Debtor's interest in the Beach House.   Following the foreclosure of the Beach House and the settlement of the confirmation action in Charlotte County, <u>Debtor has no further liability to Former Class 4 and Lot 47 Island Harbor Club. LLC will not be treated in the Plan.</u>

### 6.5    <u>Class 2:  Secured Claims of Mortgage Lenders Wells Fargo and Specialized Loan Servicing.   IMPAIRED</u>

Class 2 consists of the Secured Claim of Wells Fargo ("WF") and Specialized Loan Servicing ("SLS") (see Proof of Claim 4).  Both of these loans are secured by rental properties owned or partially-owned by Debtor.  Both properties produce sufficient rental income to pay the mortgage payments and neither mortgage is in default.  The Debtor's Plan will require Debtor to continue making monthly payments due under the mortgages based on their pre-petition amortization schedule at the stated interest.   Both debts require continued

payment of tax and insurance escrows.  <u>In both cases, Debtor will cure all pre-petition arrearage within 90 days after confirmation of the Plan, with no penalties or interest.</u>

A summary of Class 2 is shown below:

|  | Pre-Petition Secured Debt |  | Proposed Monthly Payment | Terms |
|---|---|---|---|---|
| Wells Fargo – Debt secured by Florida Condo | $33,573.00 |  | $341.09 per month, plus iinsurance and tax escrow. | 6.5 % (30 years) |
| SLS – Debt secured by Norton Circle House | $103,074.94 |  | $522.25 | 4.5 % (30 years) |

The Claim of the Class 2 Creditor is Impaired by the Plan and holders of Class 2 Claims are entitled to vote to accept or reject the Plan.  Debtor reserves the right to object to any and all claims.

In the event of a default of these payments, Creditor may give written notice to Debtor who shall have 15 days to cure the default.  In the event of the dismissal or administrative closure of the case, then the automatic stay shall be deemed to be lifted, without further action from the Court, and the Creditor may proceed to enforce its remedies through state law.

6.6    <u>**Class 3:  Secured Claim of Home Equity Lender Greenpoint Mortgage Funding, Inc.  ($4,890)              IMPAIRED**</u>

Class 3 consists of the Secured Claim of Greenpoint Mortgage Funding, Inc. ("Greenpoint") (see Proof of Claim 8, as assigned), secured by Debtor's interest in the Norton Circle rental property.  The Debtor's Plan will require Debtor to continue making monthly payments due under the mortgage/ Home equity line of credit with interest accruing at 7.125%.   Any pre-petition arrearage will be paid, without penalties or interest within 90 days after confirmation of the Plan.

The Claim of the Class 3 Creditor is Impaired by the Plan and holders of Class 3 Claims are entitled to vote to accept or reject the Plan.  Debtor reserves the right to object to any and all claims.

In the event of a default of these payments, Creditor may give written notice to Debtor who shall have 15 days to cure the default.  In the event of the dismissal or administrative closure of the case, then the automatic stay shall be deemed to be lifted, without further action from the Court, and the Creditor may proceed to enforce its remedies through state law.

**6.7    Class 4:  Unsecured Claim of Judgment Creditor St. Paul Fire & Marine Insurance Company.**

Class 4 Claims shall consist of all amounts due and owing by Debtor to St. Paul Fire & Marine Insurance Company ("St. Paul").  Pursuant to Claim 9-2, Debtor is jointly and severally liable on a judgment debt to St. Paul in the amount of $452,588, plus interest (the "Judgment"). The Judgment is currently the subject of a subrogation claim against Canal Indemnity Company pending in Dekalb County Superior Court in case 09-CV-5904 (the "Subrogation Claim").  If successful, the Debtor will collect from Canal the full amount due and payable under the Judgment.  Debtor shall assign to St. Paul all of her right and interest to the Subrogation Claim as part of its obligation to Class 4.    Additionally, Debtor shall pay to St. Paul $100 monthly toward the Class 4 Claim, with a balloon payment due upon the sale of any asset of Debtor or at the 60th month following the Effective Date.  In the event that the Subrogation Claim is lost, the St. Paul shall have the right to demand a payment of the full Judgment over the remaining months left in the 60-month Plan period, or move this Court for a conversion of the case to a Chapter 7 liquidation. In the event of a liquidation of an asset, then unsecured Class 4 and Class 5 shall be paid the proceeds pro rata.

**6.8    Class 5:  General Unsecured Claims**

Class 5 Claims shall consist of all amounts due and owing by Debtor on unsecured debts including contracts, guaranties, notes or accounts.  Debtor shall pay Holders of Allowed Unsecured Claims their pro-rata share of Debtor's disposable income for the 60 months following the Effective Date of the Plan.  Debtor proposes to pay Class 5 in quarterly payments of at least $200 in the aggregate.   In addition to quarterly payments of at least $100 to each of the creditors, Debtor shall make lump sum payments upon the sale of any asset to any party, and shall make a balloon payment to Class 5 creditors on or prior to the 60th month following the Effective Date.  Debtor shall pay Class 5 at least 25% of the value of the claims as shown below.

A list of potential Class 5 Claimants and their claims are set forth below.

| CREDITOR | CLAIM | PLAN QUARTERLY PAYMENT |
|---|---|---|
| Wells Fargo Credit Card | $7,177 | $100 |
| SunTrust Credit Card | $8,433 | $100 |
| | | |
| | | |
| TOTAL | $15,610 | $200 |

|  |  |  |
|---|---|---|
|  |  |  |

Nothing herein, including the list of estimated distributions, shall constitute an admission as to the nature, validity, or amount of claim or waive any requirement for such holder to take further action to assert such claim including any necessity to obtain a deficiency judgment against Debtor or any third party under state law. Debtor reserves the right to object to any and all claims.

Distributions to unsecured creditors in Class 5 shall be paid directly by Debtor, on the first date of each fiscal quarter, except for amounts less than $50.00, which shall be paid semi-annually on January 1 and July 1 each year.

## VII.    Administrative Expenses

Treatment of administrative expense claims is set forth in Article 5 of the Plan and summarized below.

7.1    Summary.    Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on or receiving distributions under this Plan.  Holders of such Claims are not entitled to vote on this Plan.  All such claims are instead treated separately in accordance with the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained The Slomka Law Firm, P.C. , now Slipakoff & Slomka, PC ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, The Firm received a prepetition retainer in the amount of $14,583.00.  Debtor shall pay the Firm any outstanding fees approved by the Court on the Effective Date. Debtor has paid post-petition bills and does not expect any claims for unpaid post-petition goods and services.  Debtor will incur quarterly trustee fees which Debtor intends to pay when due, and all fees due at or prior to the Effective Date will be paid in full in accordance with 11 USC § 1129(a)(12).

7.2   Administrative Expense Claims.

7.2.1  Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business, or otherwise assumed by Debtor on the Effective Date

pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

7.2.2  Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after of the occurrence of the Confirmation Date.  At the same time any Person that files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

7.2.3   Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

Debtor's attorney fees during the remaining pendency of the case prior to confirmation shall be paid as the same may be approved by the Bankruptcy Court.   The Plan provides that Debtor may pay professional fees incurred after confirmation of the Plan without Court approval.  Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court. The Debtor estimates that professional administrative expenses will be approximately $30,000.00 above the initial retainer.

## VIII.  Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.  Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.  No specific tax consequences to any Creditor are represented, implied, or warranted.

**The proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interests are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.**

## IX.    Debtor's Operations After the Filing Date

Debtor will continue to conduct her affairs as a debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code since the Petition Date.

## X.      Liquidation Analysis – 25% Payment to Unsecured Creditor Classes

In the event Debtor's estate is liquidated, the unsecured creditors would receive an amount equal to what is proposed in the Plan. Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the appointment of a Chapter 7 trustee and the liquidation of non-exempt assets. Assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern, especially stock in a closely held business.

A Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3% of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property general is equivalent to ten (10%) percent of the gross sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price. In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the current Chapter 11 attorneys.

As shown above, Debtor's total equity in the real property is valued at approximately $104,000. The secured debts will be paid in full as shown above. Unsecured debts total $450,000, so Debtor's equity would satisfy roughly 23% of the debt. Debtor proposes a plan of 25% in order to satisfy the hypothetical liquidation analysis.

Debtor has no equity in her personal property, which is reflected in his filed Schedule B and C, other than her her Scottrade account which has approximately $4,000 in it, depending on stock market fluctuations.

## XI.      Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      *Ability to Initially Fund Plan*

The Plan Proponent believes that Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2.      *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

Debtor must also show that she will have enough cash over the life of the Plan to make the required Plan payments.

If the Plan is not feasible or the Gainesville Property is not closed within six months after the Effective Date, then Debtor could sell the Florida condo to help fund the plan. However, in the event the Subrogation Claim is successful, then no further liquidation will be necessary and Debtor will fund the Unsecured Class 5 up to 100% of its claim amount.

## XII.   Procedures for Treating and Resolving Disputed Claims

### A.   Objection To Claims

The Plan provides that Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of the Plan.

### B.   No Distributions Pending Allowance

Except as otherwise provided in the Plan, no Distributions will be made with respect to any portion of a Claim unless and until any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

### C.   Estimation of Claims

Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

### D.   Resolution of Claims Objections

On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## XIII.   Conditions Precedent to the Effective Date

### A.    Conditions to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Article 11.3 of the Plan:   (a) the Bankruptcy Court shall have approved a Disclosure Statement with respect to the Plan; and (b) the Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Court.

### B.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with the Plan.

(a)    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

(b)    All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to Debtor in its reasonable discretion.

(c)    Debtor shall have received any authorization, consent, and/or regulatory approval.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor in its sole discretion).   The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## XIV.   Certain Effects of Confirmation

### A.    Vesting of Debtor's Assets

Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors, except as specifically provided in the Plan.  As of the Effective Date, Debtor may operate its businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

### B.    Discharge of Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtor or his Estate that arose prior to the Effective Date.   However, pursuant to section 1141(d)(5) of the Bankruptcy Code, except in limited circumstances, a discharge is not available to an individual debtor unless and until all payments have been made under the plan.   Therefore, Debtor does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code.   Debtor is not waiving his right to seek entry of a discharge order before completion of all plan payments.   In the event Debtor seeks entry of a discharge order after the entry of a final decree, Debtor may reopen the Case for purposes of obtaining a discharge.   Additionally, the Plan shall not be construed as attempting to discharge any debt that is excepted from discharge pursuant to Bankruptcy Code sections 1141(d)(2) and 523(a)(1).

**C.      Setoffs**

Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder of a Claim.

**D.      Exculpation and Limitation of Liability**

Under the Plan, Debtor, and Debtor's current and/or post-Filing Date and pre-Effective Date advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.   No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan.

**E.      Injunction**

Regardless of whether the Court has entered a final decree in the Bankruptcy Case, so long as Debtor is in compliance with the Plan or the Court has entered an order granting Debtor a

discharge under section 1141(d)(5) of the Bankruptcy Code, the Plan provides for a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of provided for under the Plan, except as provided for in the Plan, to the fullest extent authorized or provided by the Bankruptcy Code.

**F.    Miscellaneous Plan Provisions**

**1.    Modification of Plan**

Debtor shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, Debtor may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

**2.    Retention of Jurisdiction**

The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    to adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

(c)    To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

(d)    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

(e)    To hear and rule upon all applications for Professional Compensation;

(f)    To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g) To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h) To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i) To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

(j) To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

(k) To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under the Plan;

(l) To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m) To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(n) To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Cases; and

(o) To enter a final decree.

## XV.    Confirmation and Consummation Procedure

### A.    General Information

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan.  As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims votes to accept the Plan.  Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by holders of at least two-thirds of the dollar amount of the class <u>and</u> by more than one-half in number of Claims. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan. Voting is accomplished by completing, dating, signing and returning the ballot form (the "Ballot") by the Voting Deadline.  Ballots will be distributed to all creditors entitled to vote on the Plan and is part of the Solicitation Package accompanying the Disclosure Statement.  The Ballot indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must return their Ballots.

**B.    Solicitation of Acceptances**

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors to make an informed decision whether to accept or reject the Plan.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to, or concurrently with, such solicitation.

**C.    Acceptances Necessary to Confirm the Plan**

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by the Debtor's creditors.  The Voting Classes will be deemed to accept the Plan if at least two-thirds in amount and more than one-half in number of the Claims in each class vote to accept the Plan.  Furthermore, unless there is unanimous acceptance of the Plan by the Voting Classes, the Court must also determine that any non-accepting Class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

**D.    Confirmation of Plan Pursuant to Section 1129(b)**

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes.  To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan. Accordingly, if any Impaired Class votes to accept the Plan, the Debtor will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

**E.    <u>Considerations Relevant to Acceptance of the Plan</u>**

Debtor's recommendation that all Creditors should vote to accept the Plan is premised upon Debtor's view that the Plan is preferable to other alternatives for liquidation of Debtor's estate.  It appears unlikely to Debtor that an alternate plan or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan.  If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

Respectfully submitted this 15th day of April, 2018

_____/s/_____
Rita Ann Rose
Debtor and Debtor in Possession

**Slipakoff & Slomka, P.C.**
_____/s/_____
Howard P. Slomka

Georgia Bar No. 652875
2859 Paces Ferry Road SE
Suite 1700
Atlanta GA 30339

## EXHIBIT "A"

**MONTHLY INCOME**

| | | |
|---|---|---|
| Household SSI and pension | | 4,000 |
| Rental income | | |
| | Norton | 850 |
| | Condo | 400 |
| | Beach House | NA |
| **Subtotal Income:** | | **5,250** |

EXPENSES

| | | |
|---|---|---|
| Household and utilities | | 600 |
| Insurance | | 600 |
| Food | | 600 |
| Medical | | 150 |
| Vehicle Ins | | 145 |
| Transportation | | 200 |
| Misc property exepenses | | 500 |
| UST Payments | | 200 |
| | **TOTAL** | **2995** |

PLAN EXPENSES

| | | |
|---|---|---|
| SLS - Norton Mtg | | 522 |
| WF - Fl Condo Mtg | | 636 |
| Unsecured | | 400 |
| | **TOTAL** | **1558** |

| | |
|---|---|
| **TOTAL PROJECTED MONTHLY EXPENSES** | **4553** |